**KUESTER et al. v. HOFFMANN et al.**
**(HOFFMAN SPECIALTY CO.,**
**Intervener).**

**Civil Action No. 723.**

District Court, E. D. Wisconsin.

Oct. 28, 1944.

S. L. Wheeler and Warren G. Wheeler, both of Milwaukee, Wis., for plaintiffs.

Lines, Spooner & Quarles (by David A. Fox), of Milwaukee, Wis., and Hammond & Littell (by Nelson Littell), of New York City, for defendants.

DUFFY, District Judge.

This is a patent infringement suit with the usual defenses of invalidity and non-infringement. Plaintiffs are the patentees in U. S. Patent No. 2,152,699 issued April 4, 1939, on application filed October 8, 1934. The claimed invention relates to improvements in heating processes and systems. Claims 1 and 2 are in issue.

Defendant Balthasar Hoffmann, Jr., is a user of a heating system which plaintiffs claim exemplifies the accused subject matter. B. Hoffmann Manufacturing Company, which is in the business of making and installing heating systems, installed the system complained of in the residence of Balthasar Hoffmann, Jr. The Hoffman Specialty Company, intervening defendant, asserted itself to be the manufacturer and vendor of the heating systems and parts accused as infringements by the bill of complaint herein.

In the ordinary heating system the boiler is included in the circulatory circuit, and a demand for heat is met by supplying heat to the water of the boiler. Because of the time lag usually the water throughout the entire system reaches a temperature exceeding that actually required to reach the desired temperature in the space to be heated. Plaintiffs claim that the system of the patent maintains a storage of extremely hot water (heated liquid) divorced from the circulatory radiator system. When there is a demand for heat a valve opens which delivers a slug of extremely hot water into the constantly circulating water of the system. The valve then closes, irrespective of the continued demand for heat at the thermostat, and remains closed sufficiently long to allow the slug to be diffused. If a demand for heat still exists in the quarters to be heated, the valve reopens, admits another slug, and then closes. Plaintiffs contend it is the essence of the invention to provide the combination of (1) a circulatory system in which the warm water is constantly circulating; (2) a source of hot water normally divorced from the circulatory system; (3) a cycling valve which upon thermostatic demand feeds slugs of hot water intermittently into the constantly circulating water of the system, the feed being intermittent rather than continuous in order to prevent overrun.

Plaintiffs' patent is for a limited improvement in a crowded art, the field of hot water heating. When plaintiffs' application was filed, the examiner in charge rejected all of the claims in the application on the ground they revealed no invention. Plaintiffs appealed to the board of appeals, withdrew claims 3 and 8, and the board of appeals affirmed the examiner's rejection of claims 2 and 6 but allowed claims 1, 4, 5, 7, and 9 of the application, which then became claims 1 to 5 of the patent. These were allowed on the theory that the prior art patents, called to the board's attention by the examiner, did not show the admission of predetermined quantities of "slugs"

of high temperature water to the radiator system. The board of appeals said:

"After careful examination of the citations, we do not find applicants' particular combination of features to be anticipated in that it does not appear that the citations disclose mechanisms that would definitely act to admit predetermined quantities of extreme temperature fluid. So far as noted, the citations only partially open or close a switching valve to supply extreme temperature fluid.

"It is our view that claims 1, 4, 5, 7, and 9 may be allowed. The claims of this group include means for in some way feeding definitely controlled quantities or as termed in the record 'slugs' of extreme temperature of fluid to the system, or particular details of the mechanism."

Giving claims 1 and 2 the limited scope indicated in the opinion of the board of appeals, I am of the opinion they are valid.

In the one system which the plaintiffs have installed, the cycle of the valve is 40 seconds from its closed position to extreme open, and back to closed. Cycles in the defendants' system are from 12 to 15 minutes. Plaintiffs argue that the speed with which the cycling occurs has nothing to do with the invention, and that the purpose and effect of the cycling of the valves in the accused system is identical with the purpose and effect of the cycling of the valve of the patent.

Plaintiffs' system calls for a room thermostat. The accused system instead uses an outdoor thermostat and a hot water bulb in the supply line from the boiler. The response of these two thermostats in defendants' system is integrated: either may open or close the switch which controls the valve motor.

Plaintiffs argue that because the hot water bulb is in the water line from the boiler it must of necessity respond quickly to the hot water which is admitted from the boiler to the circulatory system. However the proof shows that the introduction of extreme temperature fluid into defendants' system depends upon the demand of the system. When heat is called for, sufficient high temperature fluid is introduced to satisfy the demands of the system at that time. In the plaintiffs' system the valve opens and closes in a relatively short cycle irrespective of the heat demand in the room where the thermostat is located. The construction of defendants' control valve is such that it cannot close quickly. In defendants' system once the switch has been closed so as to open the control valve, the switch will stay closed and the control valve will stay open until the requirements of the heating system for that particular set of outdoor temperature and water temperature conditions has been satisfied. Defendants' control valve remains open until the heat requirements of the system are satisfied, either by the expansion of the bellows connected to the bulb in the water temperature line or by the rise in the temperature outside of the building. When the heat conditions of the system are satisfied, the rocker arm is lifted from the switch by the expansion of one or both bellows and current to the resistant wires in the heat motor is cut off. It takes two or three minutes after the heat is cut off for the fluid at the heat motor to cool down and condense sufficiently to permit the control valve to close. Furthermore, in defendants' system the recirculated water is never completely cut off as in plaintiffs' system. The recirculation goes on at all times through the bypass which contains the Hoffmann orifice. It thus appears that the water temperature bulb is not immediately subject to the full blast of a slug of hot water as was argued by the plaintiffs.

I am of the opinion, therefore, that defendants have not infringed the claims in issue and that the defendant is entitled to judgment.